HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANA RINCON,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br><br>    Defendant.<br>―――――――――――――――――<br>KAREN BARRETT and KEVIN BARRETT,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br><br>    Defendant. | Case No. 3:18-cv-05415-BHS<br><br>PLAINTIFF'S RESPONSE RE MOTION TO SEVER PLAINTIFFS PURSUAN TO FED. R. CIV. P. 21 AND FOR SEPARATE TRIALS PURSUANT TO FED. R. CIV. P. 20(B)<br><br>NOTE ON MOTION CALENDAR:<br>FRIDAY, NOVEMBER 8, 2019 |

    Amtrak did not oppose consolidation of these matters but only opposed implementing the schedule of the *Rincon* case. *Rincon*, Dkt. 26, 3:18-cv-05415 at 1-2. Amtrak never contended in *Rincon/Barrett* that no basis for consolidation existed, or that consolidation would prejudice Amtrak in the trial itself. By arguing that they now "may not be ready for trial in this matter" (Motion at 2) Amtrak is seeking reconsideration of the Order on consolidation far beyond the time

PLAINTIFF'S RESPONSE RE MOTION TO
SEVER - 1
Case No.  3:18-cv-05415-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

period for doing so with without meeting the standard defined in LCR 7(h).[1] Additionally, Amtrak's recitation of the process for getting the Barrett depositions scheduled and the asserted problems caused by it can be resolved through the meet and confer process as the parties have done in all the matters they have worked together on in this Court. The Barretts' depositions scheduled for November 15, 2019 gives Amtrak ample time to prepare for trial. As the Court is aware from the first trial, it is the consideration of treating witnesses and expert witnesses which occupy the great majority of the time required by all parties in preparing for trial. If the depositions of the Barretts pose a problem, Amtrak certainly may raise that issue then. It is not a basis for severance of the Barretts now.

Consolidation of the instant matters pursuant to Fed. R. Civ. P. 42 was appropriate when it was done on July 25, 2019 (*Rincon*, Dkt. 26 and *Barrett,* Dkt. 17) and remains appropriate today. The jury confusion and appeal to prejudice recited in Amtrak's Motion is the same argument it relied on in its post-trial motion, only it's even more speculative here. To be clear, as the Court will recall, Plaintiffs organized the trial in *Wilmotte* and *Skyllingstad* with delineation between the claims necessary to aid in juror understanding. Among other techniques, separate and distinct PowerPoint presentations were used in both Opening and Closing statements, and witness examination was specific to respective Plaintiffs. In addition, pursuant to this Court's ruling, counsel for plaintiff provided the defense with a list of witnesses they intended to call for each day of trial. And still, across three (3) separate motions now, Amtrak continues to claim prejudice rooted in jury confusion but has yet to provide anything more than conclusory statements. The jury determined the value of the injuries suffered to the plaintiffs in the *Wilmotte* and *Skyllingstad* trial, but Amtrak does not discuss those injuries likely because those injuries were devastating and

---

[1] LCR 7(h) establishes the standard on Motions for Reconsideration as a "showing of manifest error. . . or a showing of new facts or legal authority" and that it must be filed within 14 days "after the order to which it relates is filed."

PLAINTIFF'S RESPONSE RE MOTION TO
SEVER - 2
Case No. 3:18-cv-05415-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090

individually warrant the amounts awarded.

*Texas Farmers Ins. Co. v. Louisiana-Pac. Corp.*, 321 F.R.D. 561 (E.D. Tex. 2017), a Texas district court case Amtrak has primarily relied upon, is entirely distinguishable from the *Rincon/Barrett* matters. In *Texas Farmers*, two different homeowners each suffered house fires, resulting in a products action against the same company alleging that the same product caused the fires. In granting the motion to sever the cases, the court noted that these fires happened in two different houses, in different cities, on different days, and from different lightning strikes. *Id* at 562. The *Texas Farmers* case was also concerned that issues of liability would be vastly different as "each claim will likewise involve the individual homeowner, vendors that conducted repairs to each home, investigators who examined each individual home, and other witnesses with knowledge unique to only one of the claims. For example, seven distinct companies have information unique to the Nieves claim, and ten distinct companies have information unique to the Prince claim. . ." *Id.* at 564. Further, "if tried together, the jury would have to consider extensive testimony regarding the conditions unique to each house before the fire, the resulting structural damage unique to each house, property damage unique to each claim, as well as living expenses unique to both Prince and Nieves, which is likely to cause confusion. [citation omitted] Additional witnesses likely to testify in this case include: the Round Rock and Frisco Fire Departments, the cause and origin investigators who examined each house, the claims adjusters for both Prince and Nieves, as well as Prince and Nieves themselves. These witnesses will only be able to testify regarding the specific fire in which they were involved. This will result in even more technical, claim-specific testimony that the jury will have to distinguish between each claim throughout." *Id.* at 564. And the houses were constructed in different parts of Texas a decade apart. *Id.* The issues that would cause confusion in *Texas Farmers* were manifest.

PLAINTIFF'S RESPONSE RE MOTION TO
SEVER - 3
Case No.  3:18-cv-05415-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

Amtrak also relies on an 18-year-old order from the Western District of Louisiana in *Gell v. Ethicon, Inc.*, No. 00-2042, 2001 WL 36649468 (W.D. La. Aug. 1, 2001). In Gell, the plaintiffs' claimed that they were injured from the use of Ethicon sutures used to close surgical wounds. The plaintiffs' three separate surgeries spanned four years, from 1994 to 1999 by three different doctors on three different parts of their bodies. Gell at 1. By contrast, all the plaintiffs in the instant matter were riding Amtrak 501 at the same time, on the same day, and were injured in the same derailment. Additionally, the Gell plaintiffs each had different statutes of limitations dates and it was possible that the sutures used on each of the Plaintiffs may have been different from those used on the others, and that some sutures may have been used which were not subject to the voluntary recall. Id. at 4.

This Court has been confronted before with claims of jury confusion and prejudice as an argument in support of severance with a defendant specifically arguing that "that Plaintiffs each suffered distinct and different injuries. . ." *Marion v. New Flyer of Am., Inc.*, C17-5949 BHS, 2018 WL 741316, at *2 (W.D. Wash. Feb. 7, 2018). This Court properly concluded that it failed "to see how any potential problems with assigning evidence regarding specific injuries . . . to a certain plaintiff cannot easily be avoided with competent trial management." *Id.*

This Court is well aware that these matters were consolidated under Rule 42 which gives the court "broad discretion" to consolidate cases pending in the same district." *Pierce v. County of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008). Numerous cases support that decision: *In re Adams Apple, Inc.,* 829 F.2d 1484, 1487 (9th Cir.1987); *First Mercury Ins. Co. v. SQI, Inc.,* No. C13-2109JLR, 2014 WL 496685, at *2 (W.D. Wash. Feb. 6, 2014). "[C]onsolidation is proper when it serves the purposes of judicial economy and convenience." *Conerly v. Veracity Research*, No. 219CV01021KJMKJNPS, 2019 WL 4392415, at *1 (E.D. Cal. Sept. 13, 2019). Courts weigh

PLAINTIFF'S RESPONSE RE MOTION TO
SEVER - 4
Case No.  3:18-cv-05415-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

the interests of judicial economy against any delay or prejudice that might result. *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987); *Pickering v. Bank of Am. Home Loans*, No. C15-1983 RSM, 2016 WL 7626261, at *2 (W.D. Wash. July 11, 2016). Further, Amtrak cites no cases supporting this assertion in which a district court has been reversed for a consolidation decision under the standard giving this Court broad discretion.

It is undisputed that consolidation of *Rincon* and *Barrett* will advance judicial economy and convenience. To be clear, Amtrak is asking the Court to undo the other consolidation orders entered in cases arising out of the derailment of Amtrak 501, and to try each Amtrak case separately.[2] Trying the *Rincon* and *Barretts* cases separately, as well as every other Amtrak case, will add substantially to the amount of trial time needed. The Court will need to call in a separate jury pool for each case, conduct separate and time-consuming jury voir dire and selection, and separate openings and closings.

Continued consolidation here especially benefits jury selection. The Court stated in the pretrial conference for the first trial that it would likely need to bring in 35 jurors rather the usual 25, because the derailment "had a great deal of publicity and attention" and that most people would know about it. Dkt. 81, p. 8:15-23. The Court's concerns were warranted; the additional jurors were needed, and additional voir dire time required in order to ferret out the impact of the knowledge and publicity on an individual juror's ability to be fair and unbiased. Amtrak is proposing that the Court go through this process twice, rather than once, and that the Court call 70 jurors (35 x 2), rather than 35, and subject them to the voir dire process. This is unnecessary, time-consuming and an undue burden on the public subject to jury duty. Once an unbiased jury is

---

[2] See pending motions to sever consolidated cases in *Mitchem v. Amtrak*, 3:18-cv-05366, Dkt. 37 (asking for three separate trials for Drew Mitchem, Donnel Linton and the Vaughns, instead of the one now scheduled); see also Amtrak's Opposition to Motion to Consolidate Harris, Dkt. 168, 2:18-cv-00134 (asking that Harris case be set as separate trial).

PLAINTIFF'S RESPONSE RE MOTION TO SEVER - 5
Case No. 3:18-cv-05415-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090

selected, that jury should be able to hear more than one case arising out of the same derailment.

In addition, continued consolidation is more efficient where the attorneys are the same and there are common experts, as here. In these matters, the parties both rely on rehabilitation expert, Anthony Choppa who will need only testify and be subject to cross-examination once regarding background, methodology, and basic principles of his expertise.

Against these unquestioned advantages to judicial economy and convenience, Amtrak cannot make any showing of prejudice and its Motion only makes conclusory statements of any prejudice. Courts regularly hear cases involving more than one claim arising out of a single accident. See Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2384 (3d ed.) n. 21, collecting cases permitting consolidation arising out of a single accident or disaster. "The language of the Supreme Court opinions, and Federal Rule of Evidence 611, recognize the key role and responsibility of the trial judge to keep the trial moving. See *Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("Trial judges necessarily require a great deal of latitude in scheduling trials."); *Geders v. United States*, 425 U.S. 80, 86 (1976) ("The judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.") (citations omitted)" *Loher v. Thomas*, 825 F.3d 1103, 1124 (9th Cir. 2016).

The jury has the task of deciding liability and, if established, each individual plaintiff's damages. Consolidation does not become prejudicial simply because the defendant concedes liability. The essential task for the jury remains the same, to decide each plaintiff's individual damages. Juries are presumed to hear the evidence and follow the instructions, whether deciding liability or damages, whether for one plaintiff or more than one. "The jury system is premised on the idea that rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions. Jurors routinely serve as impartial factfinders in cases that involve sensitive,

PLAINTIFF'S RESPONSE RE MOTION TO
SEVER - 6
Case No.  3:18-cv-05415-BHS

even life-and-death matters. In those cases, as in all cases, juries are presumed to follow the court's instructions." *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) citing *Greer v. Miller*, 483 U.S. 756, 766, n. 8 (1987).

In its detailed description of the damages in these cases, Amtrak makes two types of arguments. First, because the Rincon and the Barretts' claims are substantially different, they should not be tried together. Second, the claims are too much like each other, e.g., shared experts will cause confusion, to be tried together. This is classic "heads I win, tails you lose." The jury cannot decide the case properly because the evidence is too different for each plaintiff. The jury cannot decide the case properly because the evidence for each is too similar.

Despite attempts to characterize the injuries as distinct, there is much overlap. All the parties suffer from emotional injuries and orthopedic injuries and two have scalp abrasions. Each plaintiff has distinguishable injuries as well; ankle fractures and likely leg amputation, post-concussion syndrome, and an ulna fracture.

Ultimately, Amtrak's argument constitutes an attack on the very foundation of the jury system. Amtrak argues in effect that a jury cannot be expected to comprehend the evidence in a two-week trial, even if the jurors are listening attentively to the evidence, taking notes during trial, as well as discussing and considering all the evidence with the other jurors, and listening to their views during deliberations. Wilmotte Dkt. 119 (Jury Instruction No. 21). Even though individual plaintiffs are introduced at the beginning of the case, and though the jurors see them in the courtroom during trial, hear witnesses refer to them by name during testimony, and hear from the individual plaintiffs themselves, Amtrak assumes that it is "all going to be mush for the jury in terms of one plaintiff." Mot. at 3. That is Amtrak's argument, and it is wrong.

Finally, Amtrak argues that the jury verdict in *Wilmotte* and *Skyllingstad* trials show that

PLAINTIFF'S RESPONSE RE MOTION TO
SEVER - 7
Case No.  3:18-cv-05415-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

the jury will become confused and unable to differentiate the evidence if there is more than one plaintiff. This assessment is pure speculation. Plaintiffs Wilmotte and Skyllingstad have addressed that argument in their response to the motion for new trial, and plaintiffs Rincon and the Barretts rely upon that response. Wilmotte, Dkt. 147. Further, where the jury had questions on an issue, they followed the jury instructions and submitted questions to the court by the proper process, for guidance on their questions.

Contrary to Amtrak's unfounded claims, the expert testimony was presented in a clear and efficient manner. For instance, Dr. DeKay testified on his background, and then on direct, cross and redirect regarding Dale Skyllingstad. Only then did Dr. DeKay then testify on direct, cross and redirect on Blaine Wilmotte.[3] Other witness testimony was demarcated in the same or similar manner.

But ultimately, Amtrak's argument is fatally flawed because it ignores the fact that the jury awarded *different* amounts – both economic and noneconomic – to Mr. Wilmotte and Mr. Skyllingstad. As much as Amtrak attempts to manipulate the numbers to show otherwise, the jury clearly differentiated the plaintiffs in the verdict. The jury returned the following verdict:

Dale Skyllingstad – 750,000 economic damages; 7,000,000 non-economic damages.

Blaine Wilmotte - $1,000,000 economic damages; $6,000,000 non-economic damages.

Madison Wilmotte -- $2,000,000 loss of consortium

*Wilmotte*, Dkt. 126. None of the numbers are the same, neither the economic, nor the non-economic. For instance, the verdict reflected a $1 million differential on non-economic damages, for instance, hardly an insignificant number. Amtrak's continued argument about different injuries warranting vastly different damage awards is inconsistent with the verdict. This reflects Amtrak's

---

[3] Skyllingstad, Dkt. 118, 3:18-cv-00618.

PLAINTIFF'S RESPONSE RE MOTION TO
SEVER - 8
Case No.  3:18-cv-05415-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

transactional view of life-altering injuries that would see a fixed dollar amount exchanged for a la carte injuries which is inconsistent with how the jury views the injuries.

Where a jury returns different verdicts on different claims, that is "[t]he best evidence of the jury's ability to compartmentalize the evidence." *United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir. 1987). Both Dale Skyllingstad and Blaine Wilmotte had serious injuries, and both have significant, though different, life expectancies. And it is obvious from the verdict that the jury weighed the evidence as to each individually.

Plaintiff Skyllingstad has explained in the new trial response that the evidence supported economic damages exceeding the expert's range. Wilmotte, Dkt. 147 (New Trial Response at 24). But for purposes here and contrary to Amtrak's motion at 3, this result does not show that the jury was confused as to individual plaintiffs. The jury award of $1 million in economic damages to Blaine Wilmotte fell within Dr. DeKay's range for him. The two different economic damage verdicts reflect that the jury did not confuse Blaine Wilmotte and Dale Skyllingstad but made an individualized assessment of the evidence related to each plaintiff. This verdict does not support the severance of the consolidated Rincon and Barrett cases.

For the reasons stated above, Amtrak's motion must be denied.

DATED this 4th day of November, 2019.

LUVERA LAW FIRM

*/s/ David M. Beninger*
David M. Beninger, WSBA 18432
Andrew Hoyal, WSBA 21349
6700 Columbia Center
701 Fifth Avenue
Seattle, WA 98104
Telephone: (206) 467-6090
david@luveralawfirm.com
andy@luveralawfirm.com

PLAINTIFF'S RESPONSE RE MOTION TO SEVER - 9
Case No. 3:18-cv-05415-BHS

1

2  CLIFFORD LAW OFFICES, P.C.
   Sean P. Driscoll
3  Kristofer S. Riddle
   (Limited Admission Pursuant to APR 8(b))
4  120 N. LaSalle Street, 31st Floor
   Chicago, Illinois 60602
5  Telephone: (312) 899-9090
   Telephone: (312) 251-1160
6  spd@cliffordlaw.com
   ksr@cliffordlaw.com

7  Attorneys for Plaintiffs
   Rincón and Barrett
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S RESPONSE RE MOTION TO
SEVER - 10
Case No. 3:18-cv-05415-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090

CERTIFICATE OF SERVICE

I hereby certify that on the below date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tim D. Wackerbarth
Andrew G. Yates
Warren E. Babb, Jr.
Rachel Greenlee
Lane Powell, PC
1420 Fifth Avenue, Suite 4200
PO Box 91302
Seattle, WA 98111-9402
Telephone: 206.223.7000
Facsimile: 206.223.7107
wackerbartht@lanepowell.com
yatesa@lanepowell.com
babbw@lanepowell.com
greenleer@lanepowell.com

DATED this 4th day of November, 2019, at Seattle, Washington.

*/s/ Patti L. Bennett*
PATTI L. BENNETT
Paralegal
Luvera Law Firm
701 Fifth Avenue, Suite 6700
Seattle, WA 98104-7016
Telephone: 206.467.6090
Facsimile: 206.467.6961
patti@luveralawfirm.com

PLAINTIFF'S RESPONSE RE MOTION TO
SEVER - 11
Case No. 3:18-cv-05415-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090